IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DANA H. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:08cv0329 |
| ) | |
| KYPHON, INC., MEDTRONIC, INC., ) | Judge Thomas A. Wiseman, Jr. |
| and ANDREW ("DREW") C. HAMRIC, ) | |
| an individual, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Now before the Court is a Motion to Change Venue (Doc. No. 20) pursuant to 28 U.S.C. § 1404(a), brought by defendants Kyphon, Inc., Andrew "Drew" Hamric and Medtronic, Inc. Plaintiff Dana Smith opposes the motion. For the reasons set forth below, the motion will be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Dana H. Smith brought this action in Tennessee state court in April 2008 asserting claims against all the defendants for violation of the Tennessee Handicap Act and Title VII of the Civil Rights Act of 1964, intentional and/or negligent infliction of emotional distress, and breach of employment contract. The defendants removed the case to federal court and successfully defended against an attempt by Smith to remand to state court.

Defendant Kyphon is a medical device company doing business in the medical field. It is a Delaware corporation whose principal place of business is in Sunnyvale, California but it maintains active sales operations in Tennessee. Medtronic recently acquired Kyphon. Defendant Drew Hamric is employed by Kyphon and plaintiff Smith was formerly employed by Kyphon as a sales representative. Throughout the term of her employment, Smith was assigned to the "Dixie Region," which included Tennessee, and she worked from her home in Franklin, Tennessee. Hamric was Smith's direct supervisor for most of the time she worked for Kyphon; he was based in Nashville for most of the time he was Smith's supervisor. Smith resigned or was constructively discharged on January 17, 2007. She alleges she suffered discrimination and harassment on the basis of her gender and pregnancy throughout the term of her employment.

At the time Smith accepted employment with Kyphon, she signed an Employment Agreement, dated February 17, 2005, which included a forum-selection clause, as follows:

> In the event of any dispute or claim arising out of or relating to your employment relationship with the Company, the termination of that relationship, or this agreement (including but not limited to any claims of wrongful termination, breach of contract, fraud, infliction of emotional distress, or age, sex, race, national origin, disability, religious or other discrimination, harassment or retaliation), you and the Company agree that all such disputes or claims shall be resolved exclusively by means of a court trial conducted by the Santa Clara County (California) Superior Court or the federal district court for the Northern District of California and you and the Company agree that such courts will have personal and subject matter jurisdiction over all such disputes or claims.

(Decl. of Phillip J. Smith (Doc. No. 21), Ex. 1.)

Defendants have now filed their motion to transfer venue pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice." In support of their motion, Defendants assert that (1) Smith could have brought her action originally in the United States District Court for the Northern District of California; (2) the Employment Agreement contains a binding forum-selection clause that governs all the claims asserted in this lawsuit, and that both federal and Tennessee law favor the enforcement of forum-selection clauses; (3) several important party and non-party witnesses live in California and are not subject to being subpoenaed to testify in Tennessee; (4) all three defendants reside in California; (5) all of Defendants' records and documents relating to Smith's employment with Kyphon are located in California; (6) some of the events giving rise to Smith's claims occurred in California; and (7) a related case involving common questions of fact and law is already pending in the Northern District of California.

Smith first raises a procedural objection to Defendants' motion. Specifically, she contends that the motion to change venue is too late and Defendants have waived any objection to venue in this district. In addition, Smith argues that the forum selection clause of her employment contract is not controlling, and that the factors the Court is to weigh in considering a motion to transfer venue favor denial of the motion. The parties also dispute which of them has the burden of establishing that transfer is or is not appropriate under the circumstances.

**III.    DISCUSSION**

    **A.    Defendants Did Not Waive the Ability to File Motion to Transfer Under § 1404(a).**

As an initial matter, the Court notes that Smith is incorrect in asserting that, pursuant to Fed. R.

Civ. P. 12(h), Defendants waived their ability to bring a motion challenging venue by failing to raise the issue of venue in a Rule 12(b) motion filed before pleading and by failing to preserve the issue in their answer. In fact, a motion to dismiss for *improper* venue pursuant to Rule 12(b) is not the same as a motion to transfer to a more convenient venue under 28 U.S.C. § 1404(a) and is therefore not subject to the waiver provisions of Rule 12(h). *Cf. Blane v. Am. Inventors Corp.*, 934 F. Supp. 903, 905–06 (M.D. Tenn. 1996) (reaching the same conclusion); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, at 272 (1990) (noting that motions to transfer venue under § 1404(a) are not made pursuant to Fed. R. Civ. P. 12(b)). Smith's objection to Defendants' motion on that ground is therefore unavailing.

**B.  The Effect of a Forum-Selection Clause on the Burden of Proof in General**

Generally speaking, a contractual forum-selection clause should, under both federal and Tennessee law, be upheld so long as it is fair and reasonable in light of all the surrounding circumstances. *Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn. 1983) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972); other citations omitted). The basic presumption in favor of enforcing forum-selection clauses has, however, been altered in the context of motions to transfer venue pursuant to 28 U.S.C. § 1404(a) by the Supreme Court's decision in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). In that case, the Court interpreted § 1404(a) as requiring the district courts to "adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness," *id.* at 29, and further held that such an individualized assessment of the motion "encompasses consideration of the parties' private expression of their venue preferences" as set forth in a forum-selection clause, as well as "the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power." *Id.* at 29–30 (1988) (quotation and citation omitted).

In other words, a prior agreement between the parties concerning venue is not dispositive when § 1404(a) is at issue; instead courts must consider a valid and otherwise enforceable forum-selection clause as just one of the relevant factors among many when deciding whether transfer of venue is appropriate under the statute. *See Stewart Org.*, 487 U.S. at 31 ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive neither dispositive

consideration . . . nor no consideration . . . , but rather the consideration for which Congress provided in § 1404(a)."). Thus, while "[t]he presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus," *id.* at 29, the Court must also "take account of factors other than those that bear solely on the parties' private ordering of their affairs," including "the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' " *Id.* at 30.

Ordinarily speaking, the burden of proving that transfer is warranted under 28 U.S.C. § 1404(a) is on the moving party, and the burden is a substantial one. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Defendants in this case emphatically insist that, in the presence of a valid and enforceable forum-selection clause, the burden shifts to the non-movant to show why transfer is *not* warranted. Defendants, however, do not cite to any controlling authority that actually stands for that proposition, although a number of district courts within the Sixth Circuit have reached that conclusion. *See, e.g.*, *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002) (observing that the Sixth Circuit has not provided guidance on the issue but agreeing with "those courts that shift the burden of proof to the party opposing transfer based on a valid forum selection clause"). The absence of any Sixth Circuit decision on this issue may well be due to the fact that district courts have broad discretion in ruling on motions to transfer venue under § 1404(a) and their decisions are not frequently appealed. Regardless, this Court is not bound by other district court decisions, and this Court reads *Stewart Organization v. Ricoh, Inc.* as establishing that a forum-selection clause is just one relevant factor among many that must be considered as part of the § 1404(a) analysis. While the presence of a forum-selection clause may weigh heavily in favor of transfer, that factor alone will not necessarily be dispositive. *Cf. Clayton v. Heartland Resources, Inc.*, No. 3:08-cv-0513, 2008 WL 2697430, at *3 (M.D. Tenn. June 30, 2008) (slip copy) (observing that the determination whether to transfer a case pursuant to § 1404(a) requires consideration of "a number of 'case-specific factors,' including the existence of a forum selection clause," as well as certain private- and public-interest concerns, but that the moving party bears the burden of establishing that the factors weigh strongly in favor of transferring venue); *Nelson v. Master*

*Lease Corp.*, 759 F. Supp. 1397, 1400–01 (D. Minn. 1991) ("[W]hen a court is considering a motion to transfer under 28 U.S.C. § 1404(a) a forum selection clause is only one factor to be considered and the burden remains on the party seeking the transfer."); *Hoffman v. Minuteman Press Int'l*, Inc., 747 F. Supp. 552, 554 (W.D. Mo. 1990) ("The integrity of contractual obligations is unquestionably important. That concern, however, can be easily accommodated. If a party resisting the enforcement of a forum clause does not wish the clause to figure into a court's balancing of the § 1404(a) factors, then he should bear the burden of showing why the clause should not factor into the court's decision. Thus, the party moving for the transfer still bears the burden of proving that the balance of § 1404(a) interests weighs in favor of transfer, and, unless the party resisting application of the forum clause can demonstrate why it should not, the clause will factor significantly into the balancing.").

      **C.**      **The Forum-Selection Clause Is Unenforceable in the Context of a Title VII Claim**

The venue provision contained within Title VII states in pertinent part as follows:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action *may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed*, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3) (emphasis added). At least one district court has held that this provision renders unenforceable any private agreement limiting a plaintiff's choice of forum for bringing a Title VII discrimination suit, in contravention of the statute. *Thomas v. Rehabilitation Services of Columbus, Inc.*, 45 F. Supp. 2d 1375 (M.D. Ga. 1999). This Court finds the reasoning in *Thomas* to be persuasive

      In that case, the defendant sought to transfer the case from the Albany division of the Middle District of Georgia to the Columbus division, approximately 100 miles away, on the basis of a forum-selection clause contained in the plaintiff's employment contract. The court there first conducted an analysis under § 1404(a) (as discussed below) and found that public policy interests in maintaining the plaintiff's Title VII case in the forum of her choice essentially trumped the parties' private forum-selection agreement. The court therefore found that it had the discretion to deny the motion to transfer.

      The court went further, however, and affirmatively held that the agreement to select the forum in

that case was rendered unenforceable by the venue clause contained in Title VII, based on the Supreme Court's decision in *Boyd v. Grand Trunk Western Railroad Company*, 338 U.S. 263 (1949). In *Boyd*, the petitioner was injured while working for the defendant railroad company. In exchange for receiving advance payments from the defendant, he signed an agreement restricting the forum, in the event he elected to sue, to the county or district where he resided at the time the injuries occurred, or in the county or district where the injuries occurred. The petitioner filed suit to recover damages under the Federal Employers' Liability Act ("Liability Act") in the Superior Court of Cook County, Illinois rather than in Michigan as authorized by the forum-selection clause of the agreement he had signed. The railroad company filed suit in Michigan to enjoin the Illinois action. The Michigan Supreme Court enforced the agreement but the United States Supreme Court reversed, holding that "contracts limiting the choice of venue are void as conflicting with the Liability Act." *Id.* at 265.

Specifically, the Liability Act provided in pertinent part that any action under the Act "may be brought . . . in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action." *Id.* (quoting § 6 of the Liability Act, 45 U.S.C. § 56). It was undisputed that the defendant railroad company was doing business in Cook County, Illinois, where the petitioner had brought suit, and the statute expressly permitted the petitioner to file suit against the defendant there. Notably, however, the statute also permitted suit to be brought in Michigan where the cause of action arose, which was a forum permitted by the forum-selection clause in the contract. Notwithstanding that fact, the Court stated:

> We hold that petitioner's right to bring the suit in any eligible forum is a right of sufficient substantiality to be included within the Congressional mandate of § 5 of the Liability Act: 'Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this Act, shall to that extent be void * * *.' The contract before us is therefore void.

*Id.*

The Middle District of Georgia, in *Thomas*, noted that the Supreme Court had cited *Boyd* "in support of the proposition that '[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.' " *Thomas*, 45 F. Supp. 2d at 1380 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). In finding that the same analysis applied to the facts

before it, the court in *Thomas* continued:

> Like section 6 of the Liability Act, Congress specifically enacted a venue provision in Title VII which affords an aggrieved party a choice of forums in which to prosecute her claims. . . .  In deciding *Boyd*, the Court surely recognized that the forum selection clause in the parties' agreement followed one of the venue provisions in section 6 of the Liability Act, namely, that the action may be brought in a district "in which the cause of action arose."  Nevertheless, the Court held that the forum selection clause was void because it worked as a device to defeat the "substantial right" Congress enacted to the benefit of the injured worker to select the forum to recover for his injuries.  Mindful that Title VII does not contain any provision analogous to section 5 of the Liability Act, this Court finds that the forum selection clause is void for the same reason:  Congress enacted a specific venue provision directly in Title VII, in part, to ensure that an aggrieved party would be afforded a range of choices in selecting her judicial forum, and thereby reduce some of the obstacles she may confront to fairly enforce her civil rights.  Significantly, this is not a case in which the expression of public policy concerning choice of venue need be inferred from a provision unrelated to venue. . . .  Rather, the public policy which permits an aggrieved party to bring her Title VII action in the forum in which the alleged discriminatory acts occurred is expressly stated in the statute.  This Court [finds] that the decision to enforce a forum selection provision implicates the larger aims of the Civil Rights Act:  By broadly deferring to the plaintiff to select her preferred forum, Congress recognized that the plaintiff may submit her Title VII claim to a jury drawn from the local community, and sanctioned such an outcome in order that local residents may participate in the determination of whether the defendant's actions constitute an unlawful employment practice.  Accordingly, this Court holds, as a matter of law, that the contractual choice-of-forum clause in the Acknowledgment form is unenforceable under the terms mandated by Congress in Title VII.

*Id.* at 1380–81 (internal citations omitted).

*Thomas* has neither been reviewed by the Eleventh Circuit nor expressly followed in its holding by any other district court.[1]  Nor, however, are there a great number of cases considering the precise issue presented in *Thomas* as well as in the case at bar, that is, the enforceability of a forum-selection clause in the context of a Title VII case.  This Court finds the reasoning in *Thomas* to be persuasive and reaches the same conclusion:  that the forum-selection clause here, by requiring Smith to bring suit in California rather than in Tennessee, where she worked and allegedly suffered discrimination and harassment on the basis of her gender, is unenforceable based on the forum provision contained in 42 U.S.C. § 2000e-5(f)(3), which embodies a public policy determination that Title VII plaintiffs should have a choice of where to bring suit.

---

[1] Defendants here cite to *Woolf v. Mary Kay, Inc.*, 176 F. Supp. 2d 642 (N.D. Tex. 2001), in which the court denied the *plaintiff's* motion to transfer venue and distinguished the case procedurally and on the facts from *Thomas*.  *Woolf* is likewise factually and procedurally at odds with the case at bar and this Court does not find it helpful or instructive for that reason. *See id.* at 648–49 ("Here, unlike the plaintiffs in *Thomas* and *Red Bull*, Woolf has not asserted that she has a federal statutory right to bring her civil rights action in the forum in which the alleged discriminatory acts occurred. . . .  Section 1981, on which Woolf's civil rights claim is based, contains no special venue provision. See 42 U.S.C. § 1981(a).").

Given the unenforceability of the forum-selection clause contained in the employment agreement, the Court must conduct a § 1404(a) analysis to determine whether the other factors weigh heavily in favor of the defendants' motion to transfer venue. As set forth below, the Court finds that whether the forum-selection provision is enforceable or not, public-policy considerations permit this Court to exercise its discretion to deny the motion to transfer.

### D. Consideration of the § 1404(a) Factors

Although the parties expend a lot of ink on the issue, there is no real dispute that venue is proper in either this forum or the Northern District of California, and that the California court may properly exercise jurisdiction over all the defendants. The Court must therefore balance the evaluative factors identified in § 1404(a). In considering a motion to change venue under § 1404(a), "a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.' " *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart Org.*, 487 U.S. at 30). The private interests of the parties include:

> (1) the convenience to the parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; [and] (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively. . .

*Campbell v. Hilton Hotels Corp.*, 611 F. Supp. 155, 157 (E.D. Mich. 1985) (quoting *Schneider v. Sears*, 265 F. Supp. 257, 263 (S.D.N.Y. 1967)). Also relevant is the "locus of operative facts." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006). Public interest factors include: (1) the enforceability of the judgment; (2) practical considerations affecting trial management; (3) docket congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

#### *(1) Private-Interest Concerns*

##### *a. Plaintiff's Choice of Forum*

Generally, one of the most significant factors in considering whether venue should be transferred is the plaintiff's choice of forum. A plaintiff's choice of forum is usually entitled to "substantial consideration" in balancing the § 1404(a) factors. *See Warrick v. Gen. Elec. Co.*, 70 F.3d 736, 741 (2d

Cir. 1995) (*per curiam*) (quoting *A. Olinick & Sons v. Dempster Bros., Inc.*, 365 F.2d 439, 444 (2d Cir. 1966)). This is especially true where the plaintiff also resides in the chosen forum. *FUL, Inc. v. Unified Sch. Dist. No. 204*, 839 F. Supp. 1307, 1311 (N.D. Ill. 1993).

Defendants argue that when, as here, the parties have previously expressed an agreement as to the preferred forum, the plaintiff's choice of forum in filing suit is given little or no weight. Under ordinary circumstances that would be true*. See Clayton v. Heartland Resources, Inc.*, No. 3:08-cv-0513, 2008 WL 2697430, at *5 (M.D. Tenn. June 30, 2008) (slip copy) (noting that where there is a valid forum selection clause, "no particular deference is afforded to a plaintiff's choice of forum" (citations omitted)). Under the circumstances presented here, however, the Court finds that the plaintiff's choice of forum is entitled to substantial weight because (1) the Court has determined that the forum-selection provision is unenforceable and therefore irrelevant; and (2) even if the forum-selection provision were otherwise enforceable, the public-policy rationale behind the passage of 42 U.S.C. § 2000e-5(f)(3) requires that substantial weight be accorded the plaintiff's choice of forum. Either way, the Court finds this factor to weigh heavily in favor of maintaining the case in this district.

### b. *The Convenience of the Parties*

In support of transfer, Defendants argue that all three of them (including Medtronic, which likely will have no role to play in this dispute) reside in California and that because three of the four parties live in California, this factor weighs in their favor. Smith responds by arguing that she would personally be significantly burdened by transfer of this matter to California. She recently gave birth and has a two-month old baby, and litigating in California would impose a physical, logistical and financial hardship on her.

It is clear that the burden on Smith of litigating in California outweighs the burden imposed on Kyphon and Hamric of litigating in Tennessee. Hamric is still employed by Kyphon and is represented by the same counsel, and Defendants have all obtained local counsel and had California counsel admitted to practice in this Court *pro hac vice*. Because Kyphon is a large corporation that continues to conduct business in Tennessee, the financial and logistical burden imposed on both Kyphon and Hamric of continuing to litigate in Tennessee is minimal compared to the burden that would be imposed on Smith of being required to pursue her claims in California.

### *c.     The Convenience of the Witnesses*

Convenience of *non-party* witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis. *Steelcase, Inc. v. Smart Techs., Inc.*, 336 F. Supp. 2d 714, 720–21 (W.D. Mich. 2004) (citations omitted). The relevant considerations concerning this factor include the number of essential non-party witnesses, their location and the preference of courts for live testimony as opposed to depositions. Of course, the convenience of the witnesses factor should not devolve into a contest between the parties as to which of them can present a longer list of possible witnesses located in the respective districts; the party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover. C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3851 at 425.

Smith argues that nearly all of the relevant events at issue took place in Tennessee and that, consequently, nearly all the key non-party witnesses are in Tennessee, Kentucky (within the Court's subpoena power) or Alabama. In her affidavit Smith identifies two non-party witnesses she contends will be important: (1) Andrew Doggett, a resident of Memphis, Tennessee, a previous Kyphon employee and her direct supervisor before Hamric, who allegedly has knowledge regarding "management practices of Kyphon with respect to favoritism of male employees" and regarding defendant Hamric's conduct generally; and (2) Dr. Phillip Singer, a resident of Bowling Green, Kentucky, a former client of Plaintiff's when she worked for Kyphon who personally witnessed some of Hamric's inappropriate and harassing behavior toward Plaintiff. Smith also identifies two other potential witnesses who are apparently still employed by Kyphon but who reside in Tennessee, including Patrick Yoder and Mark Couch, as well as two others who reside in Birmingham, Alabama (approximately 200 miles from Nashville): Harold "Trip" Treleavan and Richard Manry. She asserts that these are former co-workers who are familiar with Hamric's conduct and Kyphon's employment practices generally.

In their original motion, Defendants identify several current employees located in California who are potential witnesses. Because these witnesses are employees who can be compelled to testify on behalf of their employer, their convenience is of lesser relevance. *Cf. Steelcase, Inc.*, 336 F. Supp. at 721. Defendants also identify two former employees, Steve Hams (former Vice President of Human Resources for Kyphon) and David Shaw (General Council and Vice-President of Legal Affairs), as

potential witnesses who reside in California. According to the Defendants, both Hams and Shaw were personally involved with Kyphon's response to Plaintiff's inquiries and complaints concerning the terms and conditions of her employment.

Further, in their reply brief, Defendants claim that current employees Mark Couch, Patrick Yoder, Richard Manry, and Trip Treleaven are willing to travel to California if called as witnesses in this action. Again, because they are employees, they can be compelled to testify by their employer, and their convenience is of less import. In any event, even if they are willing to travel to testify, it is apparent that it would be more convenient, both for them and their employer, to have them testify in Tennessee.

In essence, this factor boils down to apparently two witnesses for either party who would potentially be substantially inconvenienced by the other party's forum choice. Neither party has presented proof that these witnesses are *not* willing to travel to testify. Defendants argue that Smith's witnesses are "minor" witnesses, but they have not shown that the testimony of Hams or Shaw would be more significant. They simply state generally that Hams and Shaw are knowledgeable about Kyphon's response to Smith's claims and the terms and conditions of her employment.

The Court is forced to conclude that the convenience of witnesses, both party and non-party. does not weigh heavily in favor of either party's position.

### d.  *Location and Access to Sources of Proof*

Defendants also argue that California is a more appropriate forum because it is Kyphon's principal place of business and for that reason, the corporate records and documents that will be necessary for a trial are all located in California. Defendants have not identified what documents it would be necessary to move if this case were tried in Tennessee, other than Smith's personnel file, which is likely not terribly bulky. In response, Smith argues that this factor should be given little weight because "modern technology allows easy reproduction" of relevant documents, and easy transport given that images of most documents can be scanned and saved on a computer disk. Smith does not contend that she is personally in possession of any large number of documents that would weigh in favor of denying the motion to transfer. The Court finds that this factor does not weigh substantially either in favor of or against transfer, as this case is unlikely to be document-intensive.

#### e. The Locus of Operative Facts

Plaintiff asserts she was employed as a sales representative for Kyphon and assigned a territory that covered parts of Tennessee and Kentucky. As a result, the vast majority of the events in question took place in Tennessee, and the key witnesses, other than party witnesses, are located in or near Tennessee. Kyphon continues to conduct active sales operations in Tennessee.

Defendants do not dispute Plaintiff's assertions in this regard but maintains that other factors weigh more heavily in its favor. The Court finds that the fact that the Plaintiff is based in Tennessee and allegedly suffered injuries in Tennessee weighs in favor of maintaining venue in this forum.

### (2) The Interest of Justice – Public-Interest Factors

The parties raise several arguments relevant to the public interest. Plaintiff argues that the docket in California is more congested; that Tennessee has an interest in having civil rights claims litigated in Tennessee; and that judges in this district are more likely to be familiar with Tennessee law. Defendant argues on the other hand that relative docket congestion is of minimal importance; Tennessee public policy favors enforcing valid contracts, including forum-selection agreements; and California judges are perfectly well equipped to interpret and apply Tennessee law.

Defendants also argue that the transferring the case to the Northern District of California would foster judicial economy because there is a related action, involving common questions of law and fact, already pending in the Northern District of California. The related action, *Dodd-Owens v. Kyphon, Inc.*, Case No. CV 06 03988–JF, is a prospective class action brought by one current and six former female sales employees of Kyphon, alleging that Kyphon engaged in gender discrimination and retaliation in violation of Title VII by treating the class members less favorably than similarly situated male employees with regard to the terms and conditions of employment. Discovery had not yet started in that case, nor has a Case Management Order been entered, and Kyphon's answer was only filed in March 2008. The named plaintiffs are from all over the country – Florida, New Jersey, Colorado, Pennsylvania, California. Defendants, in support of their motion, cite several cases in which the interest in promoting systemic integrity and judicial economy has warranted the transfer of cases to other districts in which cases involving the same parties and issues were already pending. *See, e.g.*, *DataTreasury Corp. v. First Data Corp.,* 243 F. Supp. 2d 591, 597 (N.D. Tex. 2003) (granting motion to transfer venue in the interest of

judicial economy to the district in which the case had first been brought and in which two related patent-infringement cases were still pending); and *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960) (granting a motion to transfer a case to the district where a case involving identical parties and issues was already pending, stating: "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent."); *Metal Sales Mfg. Corp. v. Werne & Assocs., Inc.*, 2006 WL 840424, at *4 (W.D. Tenn. 2006) (holding that the interest of promoting systemic integrity weighed in favor of granting the defendant's motion to transfer a contract dispute to the district in which a case involving the exact same parties and the same agreement was already pending).

The Court finds that the pending class action alleging sex discrimination and retaliation is not sufficiently similar to the case at bar to weigh in favor of transfer. First, although the California class action was filed in June 2006, to date no Case Management Order has even been entered in that case—it clearly is not moving forward with any alacrity. Further, although Smith's complaint and the class-action complaint in California raise similar allegations of gender and pregnancy discrimination, Smith's claims are focused less on systemic gender discrimination within Kyphon as an entity and more on the specific actions of her supervisor and others with whom she worked directly. While it is true that this matter, if transferred to California, might for some purposes be consolidated with the class action for purposes of obtaining discovery from Kyphon, such consolidation would likely come only at the expense of a significant delay in the progress of Smith's suit. The case at bar will likely be highly fact-intensive, and a majority of the relevant facts will arise from Smith's treatment by her supervisor and co-workers in Tennessee. In sum, the fact that a discrimination class action is currently pending against Kyphon in California does not weigh significantly in favor of transfer in this particular case. *Cf. Ark. Right to Life State Political Action Comm. v. Butler*, 972 F. Supp. 1187 (W.D. Ark. 1997) (transfer for the purpose of consolidation with a case pending in another district is not warranted where the case sought to be transferred raises issues not present in the other pending case and where the cases are at procedurally different points and transfer would likely disturb the other case's progress); *Payne v. AHFI Netherlands, B.V.*, 482 F. Supp. 1158, 1164 (N.D. Ill. 1980) (noting that the fact that a related action is pending in another district, while important, is not conclusive and standing alone is entitled to little weight).

More important is the public interest in permitting a Title VII plaintiff to pursue her case in the forum in which the alleged discrimination occurred. Other courts have also recognized the importance of this interest. In *Red Bull Associates v. Best. Western, Inc.*, 686 F. Supp. 447 (S.D.N.Y. 1988), *aff'd* 862 F.2d 963 (2d Cir. 1988), the plaintiff was a motel that was a former licensee of the defendant national motel chain. The motel brought suit to enjoin the chain from terminating the license agreement, alleging that it was being terminated in violation of the federal Fair Housing Law, the Public Accommodations Law and 42 U.S.C. §§ 1981 and 1982, insofar as the license was terminated solely because the licensee was providing lodging to black and Hispanic homeless persons under a contract with the local welfare department. In a decision rendered prior to the Supreme Court's decision in *Stewart Organization*, the district court denied the defendant's motion to transfer venue despite the forum selection provision in the parties' license agreement, on the grounds that transferring the matter from New York to Arizona "would contravene a strong public policy of the forum in which suit is brought." *Red Bull Assocs.*, 686 F. Supp. at 452 (quoting *Bremen*, 407 U.S. at 15). In reaching its holding, the court found that private interest factors did not provide any basis for setting aside the parties' agreement and noted that if plaintiffs had "attacked their ouster from Best Western on any ground other than racial discrimination, we would find no reason to set aside the parties' contractual bargain to litigate membership disputes in Arizona." *Id.* at 451. However, the court also found that "civil rights plaintiffs act not only in their own interests but also – and more importantly – as private attorneys general for the vindication of the public interest." *Id.* Further, "Congress has declared that the entire community has an interest in ensuring fair housing and equal access to public accommodations for its citizens, and the private attorney general is entitled to have the local residents play the part of fact-finder in determining whether or not defendant's actions were inimical to that goal." *Id.* at 452. Accordingly, the court denied the motion to transfer.

On appeal, the Second Circuit agreed with the district court that the forum-selection clause was not controlling under the circumstances, noting:

> While individuals are free to regulate their purely private disputes by means of contractual choice of forum, we cannot adopt a *per se* rule that gives these private arrangements dispositive effect where the civil rights laws are concerned. Congress declared two factors decisive on a motion for transfer pursuant to § 1404(a). The private convenience of the parties . . . was only one of the elements to be considered. The other component of the analysis—the interest of justice—is not properly within the power of private individuals to control. The existence of a forum selection clause cannot preclude the district court's inquiry into the public policy ramifications of transfer decisions.

*Red Bull Assocs.*, 862 F.2d at 967. The court affirmed the district court's decision on the grounds that it had not abused its discretion in finding that public policy interests outweighed the parties' forum-selection clause:

> Post the Supreme Court's pronouncement in *Stewart*, it is clear that a district court has even broader discretion to decide transfer motions under § 1404(a) than was provided by *Bremen*. Since we believe the district court did not abuse its discretion in refusing to transfer even under the relatively strict confines of *Bremen*, its decision was *a fortiori*, not an abuse of discretion under Stewart and was clearly 'authorized by law' under § 1404(a).

*Id.* at 967 (citation omitted).

A few years later, the district court of Minnesota reached a similar conclusion in *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397 (D. Minn. 1991), a case relied upon heavily by Smith in the case at bar. In that case, the defendant was incorporated in Michigan and had its principal place of business in Pennsylvania. The plaintiff was hired as a sales associate based in Minnesota. At the time she was hired, she participated in a training program in Pennsylvania, where she signed a document containing a forum-selection clause. She then returned to Minnesota as the defendant's sole employee in that state. She was terminated six months later and filed suit in Minnesota alleging sexual discrimination in violation of the Minnesota Human Rights Act, which Minnesota courts have interpreted as being analogous to Title VII of the Civil Rights Act of 1964. 759 F. Supp. at 1398 & n.1. The defendant promptly filed a motion to transfer pursuant to 28 U.S.C. § 1404(a) or to dismiss under 28 U.S.C. § 1406.

Based on its reading of the Supreme Court's decision in *Stewart Organization*, the district court rejected the defendant's argument that a forum-selection clause "should be given controlling weight in virtually every case," noting that the majority opinion in *Stewart* "clearly endorses the view that forum selection clauses are merely one factor to be evaluated when a district court hears a section 1404(a) motion." *Nelson*, 759 F. Supp. at 1399 n.3. In considering the convenience to the parties as part of its analysis under § 1404(a), the court found that the financial difficulty the plaintiff would suffer if forced to litigate in Pennsylvania weighed heavily in favor of maintaining venue in Minnesota. The court also found that the "disparities in bargaining power and all of the other circumstances of the contract ma[de] the forum selection clause a factor which should not be determinative in the section 1404(a) analysis." *Id.* at 1403. Finally, referencing the Second Circuit's decision in *Red Bull*, the court found that the fact that the

plaintiff sought to litigate a civil rights claim, albeit one brought under state law rather than federal, was an important public interest factor that weighed heavily in favor of denying the motion to transfer venue:

> In addition to the factor of the burden to plaintiff of litigating in Pennsylvania, the Court also considers the fact that plaintiff's claim involves civil rights to be an important factor. As the court noted in *Red Bull*, civil rights cases are not purely private contractual disputes and involve important social objectives. The interest of justice is best served by assuring the plaintiff's logistical ability to present her civil rights claim.

*Id.* The court therefore denied the motion to transfer venue.

Likewise in *Thomas v. Rehabilitation Services of Columbus, Inc.*, 45 F. Supp. 2d 1375 (M.D. Ga. 1999), discussed above, the court, in reviewing the defendant's motion to transfer venue, noted that the record was "sparse" concerning all the other factors relevant to a decision whether to transfer venue under § 1404(a), but that the defendant did not dispute that all the discriminatory acts that the plaintiff complained about in her complaint "occurred during the course and scope of her employment in Albany, Georgia." *Id.* at 1379. The court found that this piece of evidence to be "significant, since one of the factors of systemic integrity is the relationship between the location of the events that gave rise to the action and the parties' chosen forum, as suggested by the venue provision contained in Title VII." *Id.* (citing 42 U.S.C. § 2000e-5(f)(3)). The court essentially found that the public policy behind the forum provision contained in Title VII trumped the parties' private forum-selection agreement:

> By expressly providing that an action under Title VII "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," Congress sought to ensure that an aggrieved party could avail herself of a local, rather than distant, judicial forum, in part, so that she could minimize her costs in her effort to vindicate her civil rights.

*Id.* at 1379. The court noted that "transferring the case approximately one hundred miles away from the location in which the relevant conduct is alleged to have occurred virtually assures that [plaintiff] will encounter higher costs that may, for all practical purposes, deprive her of her day in court." *Id.* On the basis of that factor, as a matter of public policy rather than simply the convenience to the plaintiff, the court found that it was within its discretion to deny the defendant's motion to transfer under § 1404(a). *Id.*

This Court likewise finds that a strong public policy embodied in Title VII and concerns of systemic integrity favor permitting a plaintiff to pursue her Title VII claims in the venue in which the cause of action arose. For that reason, the Court finds that public policy concerns weigh strongly in favor of

maintaining venue in this district.[2]

### (3) Weighing the Factors Under § 1404(a)

In considering all the relevant factors together, the Court finds that the private-interest concerns weigh in favor of denying the motion to transfer venue, and the public interest weighs heavily in favor of maintaining Plaintiff's Title VII civil rights case in the forum of her choice. Having found that the forum selection clause is unenforceable, for the reasons set forth above, the Court concludes as a matter of law that the Defendants have not carried their relatively heavy burden of showing that transfer is warranted, as transfer would merely shift the inconvenience of litigation from the Defendants to Smith.

Alternatively, even assuming that the forum-selection clause is enforceable, the Court finds that the significant public interest, as embodied in the venue provision contained in Title VII, in protecting the Plaintiff's ability to have her case tried by a jury of peers drawn from the community in which the discrimination allegedly occurred, weighs at least as heavily in favor of denying the motion to transfer as the forum-selection clause in the employment agreement weighs in favor of transfer. All other things being equal, the Court finds that the Defendants have not carried their burden of showing that the relevant factors weigh heavily in favor of transfer. The Court therefore has the discretion to deny the Defendants' motion on that basis as well.

### IV. CONCLUSION

For the reasons discussed above, Defendants' motion to transfer venue of this matter to the Northern District of California pursuant to 28 U.S.C. § 1404(a) will be denied. An appropriate Order will enter and this matter referred back to the Magistrate Judge for further case management.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

[2] Defendants' reliance on *Woolf v. Mary Kay Inc.*, 176 F. Supp. 2d 642 (N.D. Tex. 2001), as a counterpoint to *Nelson* and *Thomas* is misplaced. The court in that case rejected plaintiff's argument that the forum-selection clause was not dispositive because her civil rights were implicated, but she brought suit under § 1981, which does not contain a venue provision. In addition, she sued for a violation of § 1981 based on allegations of discrimination on the basis of gender and pregnancy rather than race discrimination; the Texas court dismissed her § 1981 claim on the grounds that sex discrimination did not fall within the scope of § 1981. *Id.* at 652–53. That court nonetheless recognized that "*Red Bull* teaches that the district court, upon consideration of the alleged violations and the particular circumstances of the parties and the action [in a civil rights case], may in its discretion find cause to ignore the general rule of the enforceability of valid forum selection clauses." *Id.* at 649 (citation omitted).